UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED
MAY 24 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

UNITED STATES OF AMERICA,

vs.

ADAM LEDESMA (1),
JARED HOFFMANN (2),

Defendants.

Case No. 19MJ2174

COMPLAINT FOR VIOLATION OF
Title 21, U.S.C., Secs. 841(a)(1) and 846 - Conspiracy to Distribute Hashish Oil; Title 21, U.S.C., Sec. 841(a)(1) – Manufacture of Hashish Oil; Title 18 U.S.C. Sec. 2 – Aiding and Abetting; and; Title 21, U.S.C., Sec. 858(a)(1)- Endangering Human Life While Manufacturing a Controlled Substance; Title 21, U.S.C., Sec. 853; Title 18, U.S.C. Sec. 924(d)(1), and Title 28, U.S.C., Sec. 2461(c) — Criminal Forfeiture

The undersigned complainant being duly sworn states:

### Count 1

Beginning at a date unknown and continuing up to and including May 23, 2019, within the Southern District of California, and elsewhere, defendants ADAM LEDESMA and JARED HOFFMANN, did knowingly and intentionally conspire together and with each other and with other persons known and unknown, to distribute 100 kilograms and more of a mixture or substance containing a detectable amount of marijuana, to wit: 166 kilograms of hashish oil containing tetrahydrocannabinols, a Schedule I Controlled Substance; in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

### Count 2

On or about May 23, 2019, within the Southern District of California, defendants ADAM LEDESMA and JARED HOFFMANN, did knowingly and intentionally manufacture 100 kilograms and more of a mixture or substance containing a detectable amount of marijuana, to wit: 166 kilograms of hashish oil containing

1

tetrahydrocannabinols, all Schedule I controlled substances; in violation of Title 21, United States Code, Section 841(a), and Title 18, United States Code, Section 2.

### Count 3

On or about May 23, 2019, within the Southern District of California, defendants defendants ADAM LEDESMA and JARED HOFFMANN, did knowingly and intentionally manufacture 100 kilograms and more of a mixture or substance containing a detectable amount of marijuana, to wit: 166 kilograms of hashish oil containing tetrahydrocannabinols, a Schedule I controlled substance, and in doing so, created a substantial risk of harm to human life; in violation of Title 21, United States Code, Section 858, and Title 18, United States Code, Section 2.

### Forfeiture Allegations

1. The allegations contained in Counts 1 through 3 are realleged and by their reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 21, United States Code, Section 853, Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c).

2. Upon conviction of one or more of the felony offenses alleged in Counts 1 through 3 of this complaint, said violations being punishable by imprisonment for more than one year and pursuant to Title 21, United States Code, Section 853(a)(1) and 853(a)(2), defendants ADAM LEDESMA and JARED HOFFMANN, shall forfeit to the United States all their rights, title and interest in any and all property constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as the result of the offenses, and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations alleged in this indictment.

3. If any forfeitable property, as a result of any act or omission of the defendants
(a) cannot be located upon the exercise of due diligence;
(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the said property subject to forfeiture.

This complaint is based on the facts in the attached probable cause statement, which is incorporated herein by reference.

Sworn to before me and subscribed in my presence, this 23 day of May, 2019.

Honorable Linda Lopez
United States Magistrate Judge

James Gillis
DEA Special Agent

**Statement of Facts**

I, James Gillis, being duly sworn, declare under penalty of perjury that the following statement is true and correct:

**Training and Expertise**

I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

I have been employed by the United States Department of Justice, Drug Enforcement Administration (DEA), as a Special Agent since June 2018. I am presently assigned to the DEA San Diego Field Division, Enforcement Group 2. During the course of my employment as a DEA Special Agent, I have participated in narcotics investigations either as a case agent or in a supporting role. I have debriefed defendants, confidential sources, and witnesses who had personal knowledge regarding narcotics trafficking organizations. In addition, I have discussed the methods and practices used by narcotics traffickers with numerous law enforcement officers and confidential sources. I have also participated in many aspects of drug investigations, including but not limited to, undercover or confidential source buy operations, telephone toll analysis, records research, physical and electronic surveillance activities, and wiretap investigations.

Through my training and experience, and my conversations with other agents and officers who conduct drug investigations, I have become familiar with narcotics traffickers' use of mobile telephones, and their use of codes and code words to conduct their activities. I have become familiar with the manner in which controlled substances are packaged, marketed and consumed. I am familiar with the ordinary meaning of controlled substance slang and jargon and also with the manners and techniques of drug traffickers as practiced locally. Also, I have become familiar with narcotics traffickers'

4

methods of operation, including but not limited to the manufacturing, distribution, storage, and transportation of narcotics, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds.

I have personally participated in the investigation of the Drug Trafficking Organization discussed in this affidavit. The following is based on my own observations, the statements and written reports by other law enforcement officers, physical surveillance, interviews, subpoenaed and public records, database checks, telephone analysis, and other investigative techniques.

This affidavit is intended to show that there is probable cause for the requested complaint and does not purport to set forth all of my knowledge of the investigation of this matter.  All dates and times are best approximations.

## Butane Hash / Honey Oil (BHO) Manufacturing

Butane hash oil or honey oil (BHO) is typically a waxy, oily substance, usually yellow in color. It can be vaporized ("dabbed"), with the use of electronic cigarettes and other vaporizing devices, allowing the user to inhale the concentrated active tetrahydrocannabinol (THC). It is also easy to add to foodstuffs, creating "edibles" (or so-called "medibles" in the medical marijuana context), or solidified to make concentrated forms of cannabis known as "wax."  BHO can be made using a number of different processes.

Concentrated cannabis extraction functions on the solubility of the cannabinoids. Tetrahydrocannabinol (THC) is one of many cannabinoids found in the marijuana plant and is targeted for extraction. In cannabis concentrate extraction, solvents are the chemicals used to dissolve the cannabinoids contained in the resin glands of the cannabis plant. As the solvents pass through the plant material, they carry any dissolved plant oils to a collection vessel where the separated oils can be isolated. The preferred hydrocarbon solvent used is N-Butane. Butane dissolves organic oils very effectively

and evaporates at room temperature leaving the desired targeted THC cannabinoid behind.

Butane is highly flammable, odorless, colorless and heavier than air. Once released, it can seep into low-lying areas and sit there for a period of time. When sufficiently concentrated, any spark or other ignition source can cause a significant explosion. Butane comes in canisters that contain the gas in a pressurized and compressed fashion. This means that if a primary explosion occurs during the process, any unused butane canisters nearby can cause serious secondary explosions.

Ethanol, also called ethyl alcohol, is a toxic, volatile, highly flammable colorless liquid and vapor that can cause skin and eye irritation and may also cause respiratory irritation. Ethyl alcohol is utilized as a solvent in the refining process of raw concentrated cannabis to remove fats, lipids, and any extra butane. Improper handling of raw concentrated cannabis in freezers has previously resulted in explosions. Equipment utilized in the manufacturing/refining/distillation process of raw concentrated cannabis, include: industrial freezers/chillers, commercial roto-evaporators, distillers, heating mantels, 5 gallon buckets, scales, and laboratory glassware. In addition, the improper disposal of waste products from the manufacturing/refining/distillation process creates a risk due to the level of hazardous materials remaining in the waste products.

As this activity has spread over the last year or so, there has been a veritable epidemic of explosions, both in San Diego County and across the country. In the past three weeks, law enforcement has dismantled 6 hash oil labs (2 of which resulted in explosions with 4 individuals hospitalized) in San Diego County. Several explosions in recent years have been in residential areas where there has been a serious risk of injury to innocent bystanders (including children). Most of the explosions result in property damage as well as serious injuries and the occasional fatality. Since May 2018, DEA agents and Task forces officers have responded to 40 concentrated cannabis labs in San Diego County.

In fact, SD County HAZ-Mat and SD Fire Haz-Mat crews participated in the execution on May 23, 2019 of the search warrant discussed below. Due to combustible gas readings being at 10% or higher, which triggered an alarm on the combustible gas meter, agents had to ventilate the concentrated cannabis facility before proceeding with the court-authorized search. In an enclosed area, under OSHA guidelines, a combustible gas reading of 10% or higher requires ventilating, reassessing for danger, and awaiting gas readings at a safe level.

## INVESTIGATION OF MANUFACTURING AND DISTRIBUTION OF CONCENTRATED CANNABIS AT TARGET LOCATION

On May 14, 2019, two commercial-sized dumpsters had been placed in the loading dock area of 7648 Lemon Avenue, Lemon Grove, California ("Target Location") for pick up. After the dumpsters had been picked up for disposal, I sorted through them. I discovered approximately forty-two (42) paint bucket lids, eleven (11) five gallon paint buckets, and seven (7) stainless steel pots all containing substantial amounts of a sticky residue similar to that of concentrated cannabis (see photograph below). Based on my training, experience, and consulting with other agents' experienced with BHO investigations, I believe this residue to be derived from the extraction of concentrated cannabis. It is very common for concentrated cannabis to be transported in five (5) gallon buckets, identical to the ones I found in the trash at the Target Location. Additionally, there were numerous one (1) liter plastic measuring cups also containing the sticky residue believed to be derived from concentrated cannabis. There were several rags saturated in what is believed to be the fat that is refined out of the crude concentrated cannabis. The fat is refined out of the crude concentrated cannabis by utilizing alcohol. I found approximately thirteen (13) empty bottles of isopropyl alcohol that were disposed of in the same dumpster. I also found mouth pieces and other components that when assembled produce "vape pens." Vape pens are utilized as a delivery device for the refined concentrated cannabis.

Based on my training, experience, and consulting with other agents' experienced with BHO investigations, coupled with the contents of the trash, all of the items found in the trash were indicative of a concentrated cannabis refinery lab where raw concentrated cannabis was refined into a usable form. The usable form of concentrated cannabis is then put into vape cartridges usually in the amount of approximately one (1) gram per vape cartridge.

The warehouse facility located at Target Location is a two story building zoned for commercial/manufacturing use. I estimate the square footage of the building to be approximately 5,600 square feet. Based on my observations from surveilling the facility on numerous occasions, there are no visible indications of commercial or manufacturing operations operating out of the building. The first floor has a roll up door with a very large open bay area that I have observed at least three vehicles parked inside. The area is large enough for vehicles to maneuver around inside without having to exit the facility. Notwithstanding the lack of visible commercial/manufacturing operations, based on my training, experience, and consulting with other agents' experienced with BHO investigations, there is excessive energy use as outlined below:

Records were obtained from San Diego Gas & Electric [SDG&E]. The following table shows the electrical usage history for the last 12 months, in kilowatt-hours per month, at Target Location.

| DATE | Usage |
|---|---|
| 04/21/19 | 10,400 |
| 03/20/19 | 7,859 |
| 02/19/19 | 16,875 |
| 01/19/19 | 14,724 |
| 12/18/18 | 15,761 |
| 11/18/18 | 13,593 |

8

| | |
|---|---|
| 10/18/18 | 9,533 |
| 09/18/18 | 10,193 |
| 08/18/18 | 8,448 |
| 07/18/18 | 5,249 |
| 06/18/18 | 5,692 |
| 05/18/18 | 5,530 |

Based on my training, experience, and consulting with other agents' experienced with BHO investigations, coupled with the facts of this case, the electrical usage at the Target Location was excessive and consistent with the amount of electricity required to operate equipment commonly used for concentrated cannabis extraction and/or indoor marijuana cultivation. Equipment that draws this type of electrical currency is namely, but not limited to, high wattage lights and ballasts, circulation fans, exhaust blowers, pump systems, roto-evaporators, and other commercial distillation equipment.

In order to obtain a California State Commercial Cannabis Activity License, the California Medicinal and Adult-Use Cannabis Regulation and Safety Act requires that the licensee first obtain a license, permit, or other authorization from the local jurisdiction, and not to violate the local jurisdiction's regulations or ordinances. Based on my conversation with a code compliance officer for the City of Lemon Grove, California, there are enacted city ordinances that ban commercial cannabis cultivation and Type-6 and Type-7 cannabis manufacturing licenses in Lemon Grove, California.

Agents regularly surveilled the Target Location over the past month, and were able to identify at least two (2) individuals who routinely accessed the building utilizing a key to enter the front door as well as drive their vehicles into the building. One of these individuals I identified as Adam LEDESMA. I also identified another individual as Jared HOFFMANN. On multiple occasions, Adam LEDESMA, along with Jared HOFFMAN, generally arrived at the Target Location in separate vehicles between approximately the hours of 8:00 – 10:00 A.M., and departed the Target Location between approximately the hours of 4:00 – 7:00 P.M.

9

## Execution of Search Warrant at 7648 Lemon Avenue, Lemon Grove, CA

On May 23, 2019, DEA agents executed a court-authorized search warrant at the Target Location, which revealed it served as a concentrated cannabis manufacturing/refinery/distillation facility and arrested Adam LEDESMA and Jared HOFFMANN. SD County HAZ-Mat and SD Fire Haz-Mat crews responded to the scene due to the dangerous levels of combustible gases present at the Target Location. After extensively ventilating the concentrated cannabis facility at the Target Location for approximately 30 minutes, agents proceeded with the court-authorized search.

DEA agents seized approximately 166 kilograms of distilled concentrated substance, which based on my training, experience, and consulting with other agents' experienced with BHO investigations, is suspected of being hashish oil containing tetrahydrocannabinols, a Schedule I Controlled Substance from the Target Location. In addition, the following is a partial list of items seized from the Target Location: one (1) Pope Scientific Distiller (stand-up distillation unit), four (4) commercial roto-evaporators, Cascade Sciences Duel Ovens, one (1) Chemtech Services Distillation System, numerous Julabo Industrial Chillers and six (6) fifty-five gallon drums of 200 proof ethanol alcohol. Several photographs of the items found at Target Location are below:





11









Jared HOFFMANN, who had been previously observed on multiple occasions at Target Location, was encountered on May 23, 2019 by law enforcement in the loading bay for the Target Location. HOFFMANN was in possession of a key to the front door of the Target Location. Agents made entry into the Target Location utilizing the keys obtained from HOFFMANN. Adam LEDESMA, who had also been previously observed on multiple occasions at the Target Location, was encountered inside the concentrated cannabis facility on May 23, 2019 by law enforcement. LEDESMA was found inside a large room where refinery/distillation equipment was running, such as the vacuum purge ovens, (1) roto-evaporator and (1) standup distillation machine. At approximately 9:04 A.M., I provided HOFFMANN his Miranda warnings, which he waived and agreed to answer questions. HOFFMANN stated that he had been working at the Target Location for approximately one (1) year, and was recruited to work at the Target Location by Adam LEDESMA. HOFFMANN further explained to agents that ledgers inside of the Target Location were maintained, and reflected how much raw concentrated cannabis was being brought into the facility, as well as how much distilled concentrated cannabis was being produced. HOFFMANN explicitly stated to agents that the Target Location was a concentrated cannabis distillery. I provided LEDESMA his Miranda warnings and he invoked his right to counsel.

## **CONCLUSION**

Based on my training and experience, the above factors lead me to believe that Adam LEDESMA and Jared HOFFMANN were involved in a conspiracy to distribute, and manufacture concentrated cannabis containing THC, and endangering human life while manufacturing a controlled substance.